IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALONZO S., | |
| Claimant, | |
| v. | No. 20 C 3915 |
| MARTIN O'MALLEY, | Magistrate Judge Jeffrey T. Gilbert |
| Commissioner of Social Security, | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Alonzo S.[1] ("Claimant") appeals the final decision of Respondent Martin O'Malley,[2] Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits. On October 18, 2024, the parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1. [ECF No. 26]. This Court, therefore, has jurisdiction pursuant to 42 U.S.C. § 1383(c). For the reasons set forth below, Claimant's Memorandum in Support of Reversing and Remanding the ALJ's Decision [ECF No. 14] is granted, and the Commissioner's Motion for Summary Judgment

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using her full first name and the first initial of the last name.

[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

[ECF No. 19] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

## BACKGROUND

On April 10, 2017, Claimant filed a Title II application for a period of disability and disability insurance benefits, alleging a disability beginning on August 12, 2016. (R.13). His application was denied initially and on reconsideration, and Claimant then requested a hearing. (R.13). Administrative Law Judge ("ALJ") Michael Pendola held an initial hearing on September 14, 2018 and a supplemental hearing on June 27, 2019, and then issued his decision on July 31, 2019, finding Claimant was not disabled. (R.13-26). The Appeals Council declined to review the ALJ's decision (R.1-6). Therefore, the ALJ's decision is considered the final decision of the Commissioner, and judicial review of that final decision by this Court is authorized by the Social Security Act, 42 U.S.C. § 405(g).

## DISCUSSION

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The ALJ must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

In this case at step one, the ALJ found that Claimant had not engaged in substantial gainful activity since August 12, 2016, the alleged onset date of his disability, through the date the decision was issued. (R.15). At step two, the ALJ found Claimant had the following severe impairments: tendinosis and degenerative change of the left shoulder joint; cervical degenerative disc disease; and brachial plexopathy. (R.16). In his evaluation, the ALJ also considered Claimant's alleged mental impairments and the four broad categories of mental functioning set out in the disability regulations for evaluating mental disorders, which are known as the "paragraph B" criteria. (R.18-19). Specifically, the ALJ found Claimant had a mild

3

limitation in the area of concentrating, persisting, or maintaining pace and no limitations in the other three areas, including: (1) understanding, remembering, or applying information; (2) adapting or managing oneself; and (3) interacting with others. (R.18-19). With a mild limitation in one area and no limitations in the other three areas of functioning, the ALJ concluded the paragraph B criteria were not satisfied and that Claimant's medically determinable mental impairments did not qualify as severe impairments. (R.19).

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (R.20). The ALJ then determined Claimant had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except frequent handling and fingering bilaterally; never climb ladders, ropes, or scaffolds." (R.19-20). At step four, the ALJ concluded Claimant was able to perform his past relevant work as an assistant principal and high school teacher, and therefore, he is not disabled. (R.25-26).

Claimant asserts three arguments challenging the ALJ's decision, including: (1) substantial evidence does not support the ALJ's RFC; (2) the ALJ violated Agency policy by allowing the medical expert to testify and provide his expert opinion at the beginning of the hearing without hearing Claimant testify or confirming that he had received a summary of Claimant's testimony; and (3) the ALJ erred in his evaluation of the medical opinion evidence. The Court will address each of these arguments below and agrees with Claimant that remand is required.

4

In his first argument, Claimant challenges the RFC determination because the ALJ did not include any restrictions or accommodations in the RFC to account for Claimant's mild limitation in concentration, persistence or pace in the RFC. Claimant's Brief [ECF No. 14], at 3-8. The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). The RFC is a determination of the maximum work-related activities a claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-1001 (7th Cir. 2004). Social Security regulations require that the RFC assessment is "based on all the relevant evidence in the record." *Id.* at 1001, citing 20 C.F.R § 404.1545(a)(1).

In his decision, the ALJ found Claimant has a non-severe and mild limitation in concentration, persistence or pace. (R.18-19). The ALJ also found "persuasive" the state agency psychological consultant's opinion that Claimant "has no more than mild limitations in the area of concentrating, persisting or maintaining pace, as well as adapting and managing oneself" because it comports with the medical evidence of record. (R.25). The record, therefore, is clear that Claimant has a mild limitation in concentration, persistence, and pace. Claimant argues the ALJ was required to include an accommodation or restriction in the RFC to account for his mild limitation in the area of concentration, persistence or pace, and the ALJ did not do so.

5

As a threshold matter, the Court disagrees with Claimant that the law necessarily requires the ALJ to account for a non-severe or mild limitation in the RFC under these circumstances. The law is more nuanced than that. The regulations provide that when formulating the RFC finding, the ALJ must account for functional limitations caused by non-severe impairments *when those impairments affect the claimant's work functionality. See* 20 C.F.R. § 404.1545 ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.") (emphasis added). Said another way, a non-severe or mild impairment that does not affect a claimant's ability to function at a job does not need to be accounted for in the RFC finding, and even when an ALJ finds that a claimant has a non-severe and mild mental impairment, the ALJ can still find "no evidence of significant functional limitations associated with that diagnosis." *Kathleen C. v. Saul*, 2020 WL 2219047, at *4 (N.D. Ill. May 7, 2020); *see also Betty J. v. Saul*, 2020 WL 2557348, at *6 (N.D. Ill. May 20, 2020) (affirming an ALJ's RFC finding that did not provide any restrictions for the claimant's non-severe mental impairments).

But that does not save the ALJ's decision in this case. The problem here is that the ALJ did not explain why he concluded, if he indeed did so conclude, that Claimant's mild limitation in concentration, persistence, and pace did not affect his work functionality such that the ALJ did not need to include any corresponding restrictions in the RFC. Presumably, the ALJ did not think that Claimant's mild limitation would significantly impact his ability to function in a job, but the ALJ did

not say that or explain why that was the case, and the Court cannot, and will not, speculate about what was in the ALJ's mind. That is clear error on this record. Therefore, remand is required.

In the Court's view, this is an unfortunate result in this case. The ALJ clearly determined Claimant was able to work, and he said so: "Nothing in the record suggests any physical or mental impairments that prevent the claimant from working." (R.24). The ALJ ultimately concluded that Claimant "is capable of performing his past relevant work as an assistant principal and a high school teacher." (R.25). The ALJ may or may not have concluded that Claimant's mild limitation in concentration, persistence, and pace did not require any accommodation for him to perform his past relevant employment. If the ALJ had incorporated Claimant's limitations into his RFC analysis, it is possible he would have reached the same conclusion or perhaps he would have reached a slightly different conclusion by incorporating Claimant's mild limitations into his RFC but still would have determined Claimant was capable of some form of work with accommodations. The Court, unfortunately, cannot tell what was in the ALJ's mind because the record is silent on that matter. And the Court cannot conclude there is substantial evidence to support the ALJ's conclusion without the missing analysis the Court has identified. In the Court's view, the legal standard applicable to Claimant's appeal does not permit the Court to reach a different result than the result it has reached here on the record before it.[3]

---

[3] Although not addressed in the parties' briefs, there also is a disconnect between the ALJ's finding that Claimant had "no limitation" in adapting and managing oneself (R.19) and the

In his second argument, Claimant argues the ALJ violated Agency policy by having the medical expert testify at the beginning of the hearing and, therefore, did not have the opportunity to listen to and consider Claimant's testimony. Claimant's Brief [ECF No. 14], at 8-10. In making this argument, Clamant relies on the Agency's Hearings, Appeals and Litigation Law Manual, also known as HALLEX, which "is a Social Security Administration policy manual written to convey 'guiding principles, procedural guidance and information to the Office of Hearings and Appeals staff. *Cromer v. Apfel*, 234 F.3d 1272, 2000 WL 1544778, at *2 (7th Cir. 2000). Specifically, Claimant relies on HALLEX I-2-6-70(b), which provides:

> The [Medical Expert] may attend the entire hearing, but this is not required. If the [Medical Expert] was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the [Medical Expert] on the record. If additional medical evidence is received at the hearing, the ALJ will provide it to the [Medical Expert] for review before the [Medical Expert] testifies.[4]

Based on this provision in HALLEX, Claimant argues that prior to testifying and offering his opinion at the hearing, the medical expert must have heard, seen, or evaluated all the evidence of record, including Claimant's testimony. Claimant is correct. Because the medical expert testified first in this case, that did not happen here. Claimant's Brief [ECF No. 14], at 9.

---

state agency psychological consultant's opinion that Clamant had "no more than mild limitation [in] . . . adapting and managing oneself" which the ALJ found "persuasive." (R.25). This is internally inconsistent, and the ALJ does not provide any explanation for the inconsistency. On remand, the ALJ should clarify his findings in this respect.

[4] The HALLEX is available at http://www.ssa.gov/OP_Home/hallex/hallex.html.

8

The Commissioner argues Claimant waived this argument when his counsel did not object to the medical expert testifying at the beginning of the supplemental hearing and before Claimant had the opportunity to testify. Commissioner's Brief [ECF No. 20], at 11-12. It is not clear in the record whether the medical expert reviewed Claimant's testimony from the initial hearing before he testified at the supplemental hearing, or if the ALJ provided the medical expert with a summary of that earlier testimony, before the expert offered his opinion. Because this case is being remanded for other reasons, the Court does not have to decide if this violation of Agency policy is an independent reason for remand or if Claimant waived this argument because his counsel did not object at the hearing. The Court notes, however, that it is important for a medical expert who is offering expert opinion testimony not only to review the medical records but also listen to a claimant's own testimony about his symptoms and limitations prior to rendering his opinion or at the very least be apprised of the claimant's testimony before rendering a medical opinion. On remand, the ALJ should ensure it is clear in the record that any medical expert providing opinion testimony either hears Claimant testify, reviews Claimant's previous testimony, or receives a summary of Claimant's testimony prior to rendering an opinion.

In his last argument, Claimant contends that the ALJ erred in his evaluation of the medical opinion evidence. Claimant's Brief [ECF No. 14], at 10-12. An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a

9

[claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id.* An ALJ must explain how he "considered the factors of supportability and consistency, but he is not required to explain how he evaluated the other factors." *Id.* Although a "detailed analysis is not required," the ALJ must "give a reviewing court the bridge to connect the outcome to the record." *Id.*

In this case, the ALJ found that the medical source statement offered by Claimant's treating family physician is "unpersuasive" because it "is internally inconsistent, as well as inconsistent with the medical evidence of record." (R.25). Specifically, the ALJ stated:

> Dr. Knapp opines that the claimant is capable of functioning on a part-time basis (four hours) in a competitive work environment. However, he inconsistently states further that the claimant is limited to sitting for four hours, and standing/walking less than two hours. He further states that the claimant has a "mild" impairment in the ability to perform activities of daily living. Dr. Knapp's treatment of the claimant is rather limited and remote, as he further states in his report that he treated the claimant from March 2017 to August 2017. Medical records after August 2017 show minimal deficits and lack of ongoing treatment for cervical or upper extremity pain. Dr. Knapp further opines that the claimant has only "mild" limitations in maintaining social functioning and the ability to concentrate, persist, or maintain pace due to

10

depressive symptoms, yet he did not treat the claimant for any mental impairments.

(R.25).

As an initial matter, it is not clear to this Court how Dr. Knapp's opinion is internally inconsistent. Dr. Knapp opined that Claimant was capable of functioning on a part-time basis and limited him to siting for four hours and standing or walking for two hours. The Court, however, does not see how these findings are inconsistent with each other as the ALJ suggests. The ALJ also states that Dr. Knapp's treatment of Claimant is "limited and remote" and that he treated Claimant from March 2017 to August 2017. (R.25). As Claimant points out, however, the record contains treatment notes from Dr. Knapp for 2018 and 2019. (R.751-805; 1092-1094). Dr. Knapps's treatment of Claimant is not as limited as the ALJ states. There may be valid reasons to find Dr. Knapp's assessment of Claimant's ability to work unpersuasive. However, the reasons offered by the ALJ are not supported by substantial evidence, and therefore, remand is required for further explanation.

Claimant also argues that the ALJ's evaluation of the medical opinion evidence is flawed because the ALJ did not address the state agency physician's opinion that that Claimant's was limited in his ability to push and pull with his left upper extremity. Claimant's Brief [ECF No. 14], at 12-13. Because this case is being remanded for other reasons discussed herein, the Court declines to address this argument and, therefore, does not express any opinion on the decision to be made on remand. The Court, however, encourages the ALJ to evaluate all relevant evidence

11

on remand and provide enough explanation for the Court to be able to conclude that his decision is supported by substantial evidence.

Finally, the Court cautions Clamant not to read more into this decision than the Court intends. There is substantial evidence in the record that Claimant engages in significant activities of daily living as enumerated in the ALJ's decision, including driving, caring for personal needs, grocery shopping, making meals, attending church, helping to care for his children, and keeping active by jogging and walking on the treadmill regularly. (R.24-25). Based on these activities and other evidence in the record that suggests Claimant stopped working for reasons other than any physical or mental impairment, the Court understands why the ALJ found that Claimant may not be as disabled as he claims to be.[5] The ALJ, however, must provide more explanation and a logical bridge between the evidence in the record and his ultimate findings to show that his decision is supported by substantial evidence. Therefore, the standard of review requires remand on this record. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

---

[5] According to the ALJ, "[t]he evidence suggests that the claimant stopped working on the alleged onset date for reasons other than his physical or mental impairments. Records indicate that the claimant reported he was fired on August 12, 2016, because he parked improperly rather than in a designated parking area. Contrary to allegations that he became unable to work on August 12, 2016, the record further shows the claimant continued to contact former supervisors and coworkers attempting to get his job back. Then, when his union representative told him he could return to work in December 2016, the record indicates he did not return to work, although the reason he did not return to work is unclear from the record. Nevertheless, the claimant further indicated he felt 'discriminated against.' And was unable to find a job with another news channel due to the circumstances surrounding the termination from his last job." (R.24).

## CONCLUSION

For the reasons set forth above, Claimant's Memorandum in Support of Reversing and Remanding the ALJ's Decision [ECF No. 14] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 19] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 18, 2024